UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL V.T. CATENACCI,<br><br>Defendant. | CASE NO. 21-cv-6718 |

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("SEC") alleges as follows:

1. The SEC brings this action against Defendant Daniel V.T. Catenacci ("Catenacci") for engaging in illegal insider trading in the securities of the biopharmaceutical company Five Prime Therapeutics, Inc. ("Five Prime") in advance of Five Prime's announcement on November 10, 2020 that it had achieved positive results in the drug trial for its flagship cancer drug Bemarituzumab.

2. At all relevant times Catenacci, a professor of medicine at a Chicago-based medical school, served as a consultant to lead Five Prime's drug trial. Through his role with Five Prime, Catenacci learned material nonpublic information regarding the positive trial results, and purchased 8,743 shares of Five Prime (worth approximately $48,000) during a November 10, 2020 company video conference call which occurred hours ahead of the company's announcement of the positive trial results.

1

3. After Five Prime publicly announced the positive drug trial results following the close of market on November 10, 2020, Five Prime's stock price rose over 300% from approximately $5 per share to approximately $23 per share by the end of trading the next day.

4. Catenacci sold all his Five Prime shares the following day, November 11, 2020, realizing a total illicit profit of $134,142.38.

5. Catenacci's insider trading violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5]. The SEC brings this action to hold Catenacci accountable for his illegal conduct, permanently enjoin him from further violations of the federal securities laws, and impose civil penalties.

## JURISDICTION AND VENUE

6. The SEC brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78u-1].

7. This Court has jurisdiction over this action pursuant to Section 27A of the Exchange Act [15 U.S.C. § 78aa]. Catenacci, directly or indirectly, made use of the means or instruments or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, and courses of business constituting the violations alleged herein occurred within the Northern District of Illinois.

9. Catenacci resides and works in Chicago, Illinois.

10. Catenacci will, unless enjoined, continue to engage in the acts, practices, transactions, and courses of business set forth in this Complaint, or in acts, practices, transactions, and courses of business of similar purport and object.

## THE DEFENDANT

11. **Daniel V.T. Catenacci**, 45 years old, resides in Chicago, Illinois. Catenacci is an associate professor of medicine specializing in oncology and hematology at a major medical school in the Chicago area. In or around April 2018, Catenacci signed a consulting agreement with Five Prime pursuant to which he became a lead clinical investigator for the clinical trials regarding Bemarituzumab.

## RELEVANT ENTITY

12. **Five Prime Therapeutics, Inc.** was acquired by Amgen, Inc., a Thousand Oaks, California-based biopharmaceutical company, in April of 2021. Prior to its acquisition, Five Prime was a clinical-stage biotechnology company that developed drugs for the treatment of various cancers. During all relevant times, Five Prime's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and traded on NASDAQ under the ticker "FPRX."

## FACTUAL ALLEGATIONS

13. During the relevant period, Catenacci signed a consulting agreement with Five Prime to serve as a clinical investigator for the drug trial. From at least April 2018, Catenacci's role was to lead the clinical trial, onboard patients and review the data collected from patients participating in the trial.

14. As a consultant, Catenacci owed a duty to Five Prime to keep confidential the nonpublic information he learned about the drug trial. Catenacci also received and signed Five

Prime's consulting agreement that expressly barred him from trading on that confidential information. The agreement stated in relevant part that "certain Confidential Information, including information learned in the course of performing Services under this Agreement, may be material non-public information" and that "Consultant agrees not to trade in securities of FivePrime while in possession of material non-public information of FivePrime." Catenacci knew, or was reckless in not knowing, that he owed a duty to Five Prime to keep information regarding the clinical trial confidential, and that he was prohibited from trading Five Prime securities on the basis of that information.

15. In November 2020, by virtue of his role as a consultant for Five Prime, Catenacci learned material nonpublic information regarding the success of the drug trial. For instance, on the night of November 9, 2020, Five Prime's Clinical Development Director sent Catenacci an email attaching a draft of an abstract detailing the positive results of the trial and asking for Catenacci's comments, to which Catenacci replied, "I am pleasantly surprised and cautiously optimistic."

16. Following the Director's email, the company's Chief Medical Officer emailed Catenacci with the subject "Re: Also: do not communicate the results of the trial. SEC trading regulations." The email specifically stated that the information Catenacci had received in the abstract regarding the trial results was "confidential and 'material non-public information'" which "prohibited [Catenacci] from trading in Five Prime securities." The email further stated that Catenacci could not trade in Five Prime securities until the results were made public through a press release "[a]fter 4:30 pm EST on Tuesday Nov[ember] 10." In response to the Chief Medical Officer's email, Catenacci replied, "Data looks great overall. I look forward to speaking at 8:30 a.m."

4

17. The next morning, on November 10, 2020, Catenacci attended a video meeting in which the clinical trial investigators discussed the positive trial results. During the meeting, Catenacci successfully placed an online limit order in his personal brokerage account to buy 8,743 shares of Five Prime (worth approximately $48,000). He had never purchased or sold shares of Five Prime before that day.

18. After the close of market on November 10, 2020, Five Prime publicly announced its positive drug trial results in a press release. Five Prime's stock price rose over 300% from approximately $5 per share to approximately $23 per share by the close of market on November 11, 2020.

19. Catenacci sold all his Five Prime shares on November 11, 2020. As a result of his insider trading, he realized a profit of $134,142.38.

## COUNT 1

**Catenacci Violated Exchange Act Section 10(b) and Rule 10b-5 Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]**

20. The SEC realleges and incorporates by reference paragraphs 1 through 19, as though fully set forth herein.

21. All of the Five Prime shares that Catenacci purchased were securities.

22. Catenacci purchased the shares of Five Prime stock as described herein based on material nonpublic information that Catenacci learned in advance of Five Prime's public announcement of the positive drug trial; and therefore, he acted with scienter by knowingly or recklessly engaging in the insider trading described above.

23. Catenacci knew, or was reckless in not knowing, that he owed a duty to Five Prime to keep information about the clinical trial results confidential, and that he was not permitted to trade Five Prime securities on the basis of that information.

24. Catenacci breached the duty of trust and confidence that he owed to Five Prime by trading in Five Prime securities using that information.

25. As more fully described in paragraphs 1 through 24 above, Catenacci, in connection with the purchase and sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of any facility of any national securities exchange, directly or indirectly: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state materials facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person, including purchasers or sellers and prospective purchasers and sellers of securities.

26. By engaging in the conduct described above, Catenacci, directly or indirectly, violated, and unless enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF REQUESTED

**WHEREFORE**, the SEC respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Defendant Catenacci committed the violations charged and alleged herein.

### II.

Enter an Order of Permanent Injunction permanently restraining and enjoining Defendant Catenacci from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of

Sections 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78n(e)] and Rules 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### III.

Issue an Order requiring Defendant Catenacci to pay civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-l].

### IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### V.

Grant such other and further relief as this Court may deems appropriate.

Respectfully submitted,

Dated: December 17, 2021

/s/ Robin Andrews
Robin Andrews, IL Bar No. 6285644
Attorney for Plaintiff
U.S. Securities and Exchange Commission
44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone: (415) 705-2486
Facsimile: (415) 705-2501
Email: andrewsr@sec.gov

Of counsel
Madiha M. Zuberi (*pro hac vice* motion to be filed)
David Zhou (*pro hac vice* motion to be filed)
U.S. SECURITIES & EXCHANGE COMMISSION
44 Montgomery St., Suite 2800
San Francisco, CA 94104